UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JAMES P. BROWN, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 7:24-cv-1069-GMB |
| UNIVERSITY OF ALABAMA, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiffs James P. Brown and Patti McGee Brown bring claims pursuant to 42 U.S.C. § 1983 against The Board of Trustees of The University of Alabama (the "Board"),[1] Kay Palan, Joanne Hale, and Kristy Reynolds. Doc. 1. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 24.  Before the court are motions to dismiss filed by the Board and Palan (Doc. 8) and by Hale and Reynolds. Doc. 23.  The motions are fully briefed (Docs. 13, 14, 27 & 28) and ripe for decision.  The motions to dismiss are due to be granted but the court will allow the Browns an opportunity to remedy the deficiencies in their complaint.

---

[1] The Browns list the "University of Alabama" as a defendant in their complaint, but the Board explains in its motion to dismiss that the university is a division of the Board and is not registered as its own legal entity with the Alabama Secretary of State. Doc. 8 at 1 n.1.  The Clerk of Court is therefore DIRECTED to correct the docket to designate this defendant as The Board of Trustees of The University of Alabama.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In considering a motion to dismiss under Rule 12(b)(6), the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain

2

an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

At the motion-to-dismiss stage, the court limits its consideration to the allegations contained in the complaint. *See Erb v. Adv. Sales & Marketing, LLC*, 2012 WL 3260446, at *3 (N.D. Ala. Aug. 3, 2012). Accordingly, "a plaintiff may not supplant allegations made in [the] complaint with new allegations raised in a response to a motion to dismiss." *Brahim v. Holder*, 2014 WL 2918598, at *4 (S.D. Fla. June 26, 2014) (citing *Long v. Satz*, 181 F.3d 1275, 1278–79 (11th Cir. 1999)) ("It is axiomatic that a plaintiff may not amend his Complaint in response to a motion to dismiss.").

In the Browns' responses to the motions to dismiss, they mention facts that are not alleged in the complaint. *See* Doc. 13 at 1–2; Doc. 27 at 1–2. Because the Browns may not rely on these new facts to defeat a motion to dismiss, *see Erb*, 2012 WL 3260446, at *3, the court limits its discussion below to the allegations in the Browns' complaint.

## II. STATEMENT OF FACTS

The University of Alabama employed James Brown for 12 years as a Senior Instructor in the Culverhouse College of Business. Doc. 1 at 8. His employment was subject to a non-tenured, three-year renewable contract. Doc. 1 at 8. At the time of his hiring, the "Defendant's Department Head" informed him that the college

"regularly renews" its three-year employment contracts, and in fact had "never not renewed a [three]-year faculty contract." Doc. 1 at 8.  In late 2021, however, James' wife, Patti, "posted several opinion pieces on Facebook which were critical of the University." Doc. 1 at 8.  "After being made aware of these posts," the University did not renew James' employment contract. Doc. 1 at 8.

Based on these events, the Browns filed their federal complaint and alleged that the defendants "retaliated against Patti's exercise of her free speech rights by not renewing her husband's employment contract." Doc. 1 at 8.  As a result, the Browns claim to have "suffered financial, reputational, and emotional harm." Doc. 1 at 8.

## III. DISCUSSION

The defendants argue that they are immune from suit.[2]  First, they argue that the Eleventh Amendment immunizes Palan, Hale, and Reynolds from official-capacity claims and the Board from all claims.[3] Doc. 8 at 3–5; Doc. 23 at 3–5.  Second, Palan, Hale, and Reynolds argue they are entitled to qualified immunity for

---

[2] Hale and Reynolds also argue that the Browns' claims are barred by the statute of limitations. Doc. 23 at 8–9.  In doing so, the defendants rely on facts that the Browns improperly included in their briefs after omitting from their complaint. *See* Doc. 23 at 9 & n.7.  The Browns should include any dates material to their claims in their amended complaint, and the court will revisit any statute of limitations arguments once it receives the amended complaint.

[3] While the Browns state in response to the motion to dismiss that their "suit is directed at Defendants in their individual capacities" (Doc. 27 at 3), their complaint and briefs are not a model of clarity on this issue.  The court therefore addresses the viability of any official capacity claims against the three individual defendants.

any claims brought against them in their individual capacities. Doc. 8 at 5–9; Doc. 23 at 5–8.  The court agrees on both points.

**A.     Eleventh Amendment Immunity**

The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "The Supreme Court has extended Eleventh Amendment immunity to prevent suits in federal court against a state by its own citizens." *Brown v. Fla. Dept. of Rev.*, 697 F. App'x 692, 692 (11th Cir. 2017).  And it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court . . . when an 'arm of the State' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  The Board of Trustees of the University of Alabama, like any other board of a state university in Alabama, is an arm of the state for purposes of Eleventh Amendment immunity. *Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019); *Harris v. Bd. of Tr. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1233 (N.D. Ala. 2012) (citing *Harden v. Adams*, 760 F.3d 1158, 1163 (11th Cir. 1985)).

Likewise, Eleventh Amendment immunity has "been extended to state officials, acting in their official capacity, where an agency or individual may 'be

treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016), *abrogated on other grounds by Twombly*, 550 U.S. at 544 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  In this context, university faculty and employees are considered to be state officials. *See Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir. 1985) (explaining that the board of trustees of an Alabama state university and various university officials, such as the university president, are entitled to sovereign immunity); *Greenwell v. Univ. of Ala. Bd. of Trs.*, 2012 WL 3637768, at *7–8 (N.D. Ala. Aug. 22, 2012) (same).

There are two exceptions to Eleventh Amendment immunity.  The first is that "a state may waive its immunity expressly through legislative enactment." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990).  The second is that "Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment." *Id.*  Neither exception applies here.  Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, *see Quern v. Jordan*, 440 U.S. 332, 338 (1979), and the State of Alabama has not waived its immunity. *See* Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity.").

For these reasons, the court must dismiss the Browns' § 1983 claim against

the Board because it is an arm of the state entitled to Eleventh Amendment immunity. *See Page*, 773 F. App'x at 520. The defendants also argue that Palan, the dean of the University's business school; Hale, the associate dean of the business school; and Reynolds, the head of the business school's marketing department, are all state officials who are entitled to Eleventh Amendment immunity. *See* Doc. 8 at 7; Doc. 23 at 4; Doc. 1 at 2. The court agrees and dismisses any official-capacity claims stated against them. *See Melton*, 841 F.3d at 1233; *Greenwell*, 2012 WL 3637768, at *7–8.

**B.    Qualified Immunity**

Palan, Hale, and Reynolds also contend that qualified immunity protects them from the Browns' § 1983 claims against them in their individual capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)); *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). Qualified immunity "grants officials a right not to be subjected to litigation beyond the point at which immunity is asserted," and it

should be resolved "at the earliest possible stage of litigation." *Miller v. Palm Beach County Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (quotation marks and citations omitted). An entitlement to qualified immunity "raised on a motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Id.* at 1333–34 (quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)) (cleaned up).

Qualified immunity begins with a two-step inquiry. First, the court must determine whether the government official has demonstrated she was "acting within the scope of [her] discretionary authority when the alleged wrongful act occurred." *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000) (quotation marks and citation omitted). Here, Palan, Hale, and Reynolds assert that their roles are supervisory to a senior instructor, such as James, and that not renewing James' contract falls within their scope of authority. Doc. 8 at 7–8; Doc. 23 at 7. The Browns do not dispute this assertion, so the court moves on to the second step. *See Maggio*, 211 F.3d at 1350–51.

After a defendant establishes that she was acting within her discretionary authority—as Palan, Hale, and Reynolds do here—the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Miller*, 129 F.4th at 1333. To do so, the plaintiff must plausibly allege that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."

*Id.* (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). "Both elements must be satisfied for an official to lose qualified immunity," *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (quoting *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010)), and if "a plaintiff fails to establish either one, then the defendant is entitled to qualified immunity." *Daugherty v. Hurst*, 491 F. Supp. 3d 1214, 1224 (S.D. Ala. 2020).

Although the defendants here focus their attention primarily on the second element (*see* Doc. 8 at 8–9; Doc. 23 at 7–8), the court may conduct "this two-pronged analysis . . . in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Exercising this discretion, the court will start with the first component: whether the Browns have plausibly alleged the defendants violated their First Amendment rights when they did not renew James Brown's contract after Patti Brown's social media posts.

### 1. *Whether the Defendants Violated a Constitutional Right*

The First Amendment to the United States Constitution "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 298 (2019) (quotation marks and citation omitted). And the First Amendment may "be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff [himself], but rather by a person in a close relationship with the plaintiff." *Lewis v.*

*Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1304 (M.D. Ala. 2012) (citing *Adler v. Pataki*, 185 F.3d 35, 45 (2d Cir. 1999); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011)). To support a First Amendment claim under those circumstances, the plaintiff must show that (1) the speech at issue "can be fairly characterized as relating to a matter of public concern," (2) his "interests as a citizen outweigh the interests of the governmental entity . . . as an employer," and (3) the protected speech "played a substantial or motivating role in the government's decision to take an adverse-employment action." *Lewis*, 922 F. Supp. at 1304 (citing *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005).

Relevant here, "speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Courts look to the "content, form, and context of the speech" to determine whether a plaintiff has plausibly alleged that the speech involved a matter of public concern. *Id.*; *Cheatwood v. City of Vestavia Hills*, 2019 WL 13268181, at *3 (N.D. Ala. Mar. 1, 2019) (dismissing a First Amendment retaliation claim where plaintiff offered "no information about the nature of the grievances that he raised in his letter" so the court could not "determine whether the grievances addressed matters of public concern").

In addition, for a plaintiff to show that protected speech played a role in the

government's actions, he must allege a causal connection between the protected speech and the adverse action. *Wall-DeSousa v. Fla. Dept. of Hwy. Safety and Motor Vehicles*, 691 F. App'x 584, 591 (11th Cir. 2017). "To establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Id.* (quoting *Castle v. App. Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (cleaned up). It follows that the causal-connection inquiry requires a plaintiff to plausibly allege that the defendants had actual knowledge of the protected speech. *Id.* (citing *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).

Here, the Browns do not plausibly allege a violation of their First Amendment right to be free from retaliation. They state that Patti Brown "posted several opinion pieces on Facebook which were critical of the University" (Doc. 1 at 8), but they offer no information about the nature of these opinion pieces. Without any facts to demonstrate that these posts involved a matter of political, social, or other concern to the community, they have failed to show that Patti engaged in protected speech. *See Cheatwood*, 2019 WL 13268181, at *3. And even if they cleared this hurdle, the Browns did not provide any facts to show Palan, Hale, or Reynolds had actual knowledge of Patti's posts or that the posts caused the University's decision not to renew James' contract. The Browns thus have not pled facts in their complaint that plausibly suggest a First Amendment retaliation claim. *See Ashcroft*, 556 U.S. at

11

678. In light of this deficiency, the court concludes the Browns have failed at the first prong in the qualified immunity analysis.

### 2. *Whether the Constitutional Right Was Clearly Established*

Even if the Browns properly alleged a violation of their First Amendment rights, they also fail to show that these rights were clearly established at the time of the defendants' actions.

"To defeat a defendant's claim to qualified immunity, a plaintiff must show that a reasonable person in the defendant's position would have been on notice that his actions violated clearly established law." *Maggio*, 211 F.3d at 1354. The Eleventh Circuit has explained that "[b]ecause the analysis of First Amendment retaliation claims involves intensely fact-specific legal determinations, 'a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful.'" *Worley v. City of Lilburn*, 408 F. App'x 248, 252 (11th Cir. 2011) (quoting *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000)). And, in any case, the Supreme Court has repeatedly cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) ("This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."). For example, the "general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining

whether the violative nature of particular conduct is clearly established." *Id.*

A plaintiff nevertheless can show that a right was clearly established in one of three ways. The first is by pointing to a "materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (quotation marks and citation omitted). This path "looks at the relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law" such that the "constitutional question [is] beyond debate." *Id.* The second is by identifying a "broader, clearly established principle that should govern the novel facts of the situation." *Id.* And in the third, "the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *Id.* The latter two paths are known as "obvious clarity" cases, which are rare. *Gaines v. Wardynski*, 871 F.3d 1203, 1209 (11th Cir. 2017); *MacIntyre v. City of Palm Bay*, 2025 WL 722856, at *7 (M.D. Fla. Mar. 6, 2025).

No matter the path the Browns choose, they have not met their burden. They simply argue that "a 'reasonable competent officer' would have recognized that non-renewal of an employment contract as retaliation for First Amendment-protected speech was unlawful." *See* Doc. 13 at 5. The is exactly the type of high-level comparison the Supreme Court has rejected. *See al-Kidd*, 563 U.S. at 742. In support

13

of this general proposition, the Browns identify one non-binding and factually dissimilar case from Seventh Circuit. Doc. 27 at 7–8; *see Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011) (analyzing whether city officials are immune from First Amendment claims when they required citizens, not government employees, to apply for a permit under the city's assembly ordinance before hosting a rally and barred them from speaking at public city council meetings). The Browns make no other attempt to identify materially similar caselaw, and they neither argue nor provide any support for finding that this is a rare "obvious clarity" case. As a result, the Browns have not established that Palan, Hale, or Reynolds violated clearly established law.[4]

Because the Browns do not demonstrate that (1) the defendants violated a constitutional right or (2) that this right was clearly established at the time of the alleged violation, they have not met their burden to defeat qualified immunity for the individual capacity claims against Palan, Hale, or Reynolds.

## C. Leave to Amend

Although the allegations in the complaint are insufficient at present, a district court's discretion to dismiss a complaint without granting leave to amend "is severely restrict[ed]" by Federal Rule of Civil Procedure 15(a), "which directs that

---

[4] Even if the Browns had pointed to materially similar caselaw, they do not specify precisely when the defendants allegedly violated their First Amendment rights. Again, the Browns must plead any material dates in their amended complaint.

leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988) (internal quotation marks and citation omitted). Where a more carefully drafted pleading might state a viable claim, a district court must give at least one chance to amend the complaint before dismissing the action with prejudice. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). However, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Id*.

The court finds that any attempt to amend the Browns' claims against the Board or the individual defendants in their official capacities would be futile because these claims are barred by the Eleventh Amendment. However, with respect to the claims against Palan, Hale, and Reynolds in their individual capacities, the court will permit the Browns an opportunity to amend the complaint to correct the deficiencies described above.

When amending their complaint, the Browns should take note of their obligations under the Federal Rules of Civil Procedure. Rule 8 requires that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and "[e]ach allegation must be simple, concise, and direct." And Rule 10 requires that a complaint contain "numbered paragraphs, each

15

limited as far as practicable to a single set of circumstances."

The Browns' amended complaint must clearly set forth the facts concerning any incident about which they complain in separately numbered paragraphs. The amended complaint must contain a separate count for each claim that contains a factual basis for that claim only. Each count should identify: (1) the specific defendant(s) against whom the claim is asserted, and (2) the statute or law under which the claim is brought. In addition, the Browns must (1) identify each defendant they allege participated in the violation of their individual rights; (2) describe what each defendant did that amounted to a violation of their individual rights; (3) state when and where the incidents underlying the violation of their individual rights occurred; (4) describe how the acts or omissions of each defendant resulted in harm to one or both of them; (5) identify the nature of that harm (for example, loss of money, income, or property, bodily injury, or interference with their right to engage in or refrain from some activity); and (6) state the specific relief they seek from each defendant (for example, compensatory or punitive damages or some form of injunctive relief, including any request for attorneys' fees, costs, and expenses). Finally, the amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim without reincorporating allegations and claims from any other pleading.

## IV. CONCLUSION

For these reasons, it is ORDERED as follows:

1.      Defendants' Motions to Dismiss (Docs. 8 & 23) are GRANTED and all claims in the complaint are DISMISSED without prejudice.

2.      The Browns shall file an amended complaint consistent with this Memorandum Opinion and Order no later than **July 24, 2025.** The amended complaint must be an entire stand-alone complaint and must set forth each and every allegation and claim against Palan, Hale, and Reynolds in their individual capacities without reincorporating allegations and claims from any other pleading. The Browns do not have leave to amend their § 1983 First Amendment claim against the Board.

DONE and ORDERED on July 10, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE