FILED

2026 Mar-09  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES P. BROWN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 7:24-cv-1069-GMB |
| | ) | |
| KAY PALAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 12, 2025, *pro se* Plaintiffs James P. Brown and Patti McGee

Brown filed an amended complaint against Defendants Kay Palan, Joanne Hale, and

Kristy Reynolds. Doc. 36.  Before the court is the defendants' Motion to Dismiss the

Amended Complaint. Doc. 38.  The parties have consented to the jurisdiction of a

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 24.  The motion

is fully briefed (Docs. 38, 40 & 41) and ripe for decision.  For the following reasons,

the motion to dismiss is due to be granted in part and denied in part.

### I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  In

considering a motion to dismiss under Rule 12(b)(6), the court must "take the factual

allegations in the complaint as true and construe them in the light most favorable to

the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

James Brown and his wife, Patti Brown, initially filed a complaint against The Board of Trustees of the University of Alabama ("the Board"), Kay Palan, Joanne

Hale, and Kristy Reynolds on August 6, 2024.[1] Doc. 1.  The Browns alleged that the defendants violated their First Amendment rights in deciding not to renew James Brown's teaching contract and sought money damages for his lost earnings. Doc. 1 at 8.  The defendants moved to dismiss the claims against them, arguing they were entitled to Eleventh Amendment immunity and qualified immunity. Docs. 8 & 23. The court agreed and dismissed the Browns' complaint without prejudice while granting them leave to amend the claims against Palan, Hale, and Reynolds in their individual capacities. Doc. 29.  In the order to amend, the court instructed the Browns that their amended complaint must comply with Federal Rules of Civil Procedure 8 and 10 and should clearly describe the facts underlying their claims. Doc. 29 at 14–16.

The amended complaint alleges that the University of Alabama employed James Brown for 12 years as a Senior Instructor in the Culverhouse College of Business. Doc. 36 at 2.  His employment was subject to "a series of non-tenured, three-year renewable contracts." Doc. 36 at 2.  At the time of his hiring, Marketing Department Head Rob Morgan told Brown that the college "had never not renewed a three-year faculty contract." Doc. 36 at 2.

---

[1] The parties identify Palan, Hale, and Reynolds as the Dean, Associate Dean, and Marketing Department Head for the University of Alabama's Culverhouse College of Business, respectively. Doc. 1 at 2; Doc. 36 at 1; Doc. 38 at 8.

From June 2020 to November 2021, Patti Brown posted a number of "opinion pieces" on Facebook. Doc. 36 at 2.  The topics included (1) the "[m]ishandling of the rape investigation of Megan Rodini by University Officials and local law enforcement," (2) "[a]lleged excessive perks for the Board of Trustees," and (3) "[s]ystemic prejudice in the University's sorority system." Doc. 36 at 2.  The Browns' former landlord, Jim Johnson, took screenshots of these posts. *See* Doc. 36 at 3.  Between September 2020 and December 2020, Johnson sent these screenshots to the Browns and "threatened to report Ms. Brown's speech to the University." Doc. 36 at 3.  In his threats, he included contact information for Hale and Reynolds. Doc. 36 at 3.  "Between September 2020 and December 2021," Johnson followed through with his threats and "forwarded Ms. Brown's Facebook posts to Reynolds and Hale in retaliation for the Browns' not exercising the purchase option in a lease-purchase agreement." Doc. 36 at 3.

James Brown had a "record of teaching excellence and multiple student awards" during his time at the University, but on February 9, 2022, Reynolds and Hale "verbally informed [James] that his three-year contract would not be renewed." Doc. 36 at 4.  The nonrenewal was a "depart[ure] from past policy and previous reassurances," and "[n]o reason was provided" for it. Doc. 36 at 4.  On March 22, 2022, after Brown asked why the University was not renewing his contract, Reynolds replied, "I don't think I have to tell you." *See* Doc. 36 at 4.  One year later

4

in March 2023, Brown "learned that Jim Johnson had openly boasted to third parties that 'he was the one who got [Brown] fired by forwarding his wife's Facebook posts to the University.'" Doc. 36 at 4.

Based on these facts, the Browns contend that the defendants took an adverse employment action against James Brown in retaliation for his wife's Facebook posts.[2] Doc. 36 at 5, 7.  On these facts, they bring a  First Amendment retaliation claim under 42 U.S.C. § 1983 against Palan, Hale, and Reynolds in their individual capacities. Doc. 36 at 5–7.  The amended complaint also states a § 1983 claim for prospective injunctive relief against the same defendants in their official capacities.[3] Doc. 36 at 7–8.

_____

[2] As best the court can tell, the Browns both bring a First Amendment retaliation claim in the public employment context based on the assertion that James Brown's employers retaliated against him for her speech. *See* Doc. 36 at 7 ("Retaliation against Mr. Brown based on his spouse's protected speech constitutes actionable First Amendment retaliation."); Doc. 40 at 8 ("Plaintiffs allege that Defendants knowingly retaliated against James Brown because of Patti Brown's protected speech criticizing university leadership . . . ."). If Patti Brown intended to bring a claim asserting that Palan, Hale, and Reynolds retaliated against her as a public citizen and not an employee, *see Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005) (highlighting the differences between a First Amendment claim brought by an employee against his government employer and one brought by a citizen against a government official), she does not clearly bring such a claim and the court will not rewrite her pleading to include it. *See Thomas*, 393 F. App'x at 637.

[3] The court acknowledges that the Browns had leave to amend their individual capacity claims but did not have leave to amend their official capacity claims seeking monetary relief because those were barred by the Eleventh Amendment. *See* Doc. 29 at 5–7, 17.  The Browns' claim for injunctive relief, however, is not barred by the Eleventh Amendment and the defendants do not challenge its validity or argue they are immune from this claim. *See Lane v. Central Ala. Comm. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (explaining that a request for reinstatement generally constitutes prospective injunctive relief that falls "within the scope of the *Ex parte Young* exception and thus, [is] not barred by the Eleventh Amendment").

## III.  DISCUSSION

Palan, Hale, and Reynolds argue that (1) the amended complaint should be dismissed because it does not comply with the court's order to amend; (2) that the Browns' claims are time barred; and (3) that they are entitled to qualified immunity from all claims against them in their individual capacities.  Doc. 38 at 4.  The court addresses each argument below.

## A.    The Order to Amend

Palan, Hale, and Reynolds first urge the court to dismiss the Browns' amended complaint because it does not comply with the court's previous order.  Specifically, the defendants take issue with the Browns' failure to provide "specific dates of the posts," "detailed descriptions of the posts," or to attach the Facebook posts to their amended complaint. Doc. 38 at 4.

The court declines to dismiss the complaint on these grounds.  The Browns allege that Patti Brown made Facebook posts from June 2020 to November 2021 that were critical of (1) the University's rape investigation of Meghan Rodini, (2) excessive perks given to the Board of Trustees for the University, and (3) systemic prejudice in the University's sorority system; and they allege that their landlord sent these posts to Reynolds and Hale sometime between September 2020 and December 2021. Doc. 36 at 2–3.  These allegations adequately provide Palan, Hale, and Reynolds with notice of the facts supporting the claims against them

6

consistent with Federal Rules of Civil Procedure 8 and 10, *see Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015), and the court must accept these facts as true at the pleading stage. *Pielage*, 516 F.3d at 1284.  And while Rule 10(c) allows a plaintiff to attach an exhibit to his complaint, nothing in the rules of procedure obligates the Browns to attach copies of these social media posts to their complaint. *See U.S. ex. rel. Chabot v. MLU Servs., Inc.*, 544 F. Supp. 2d 1326, 1329 (M.D. Fla 2008).

**B.    Statute of Limitations**

The defendants also argue that the Browns' § 1983 claims are time barred. Doc. 38 at 5–6.  "The statute of limitations for § 1983 claims is governed by the forum state's residual personal injury statute of limitations, which in Alabama is two years." *Hines v. Thomas*, 604 F. App'x 796, 800 (11th Cir. 2015); *see also* Ala. Code § 6-2-38(l) (1975) (providing that the residual statute of limitations for Alabama personal injury claims is two years).

The accrual date for a § 1983 claim, however, is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1435 (11th Cir. 1997) (citing *Mullinax v. McElhenny*, 817 F.2d 711, 716 n.2 (11th Cir. 1987), and explaining that courts apply the federal discovery rule to § 1983 actions).  Under the discovery rule, the statute of limitations for a § 1983 claim begins to run when "the facts which would support

a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Mullinax*, 817 F.2d at 716 (quotation marks and citation omitted). Accordingly, a cause of action will not accrue "until the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Once a limitations period runs, the action is barred regardless of the merits of the plaintiff's claims. *See Arce v. Garcia*, 434 F.3d 1254, 1260–61 (11th Cir. 2006). However, "[a] statute of limitations defense often is poorly suited for resolution on a motion to dismiss under Rule 12(b)(6) because 'a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint.'" *Jennmar of Ky., Inc. v. Wilson*, 2021 WL 3421403, at *4 (N.D. Ala. Aug. 5, 2021) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). For that reason, dismissal is appropriate "only if it is 'apparent from the face of the complaint' that the claim is time-barred." *LaGrasta*, 358 F.3d at 845, *abrogated on other grounds by Twombly*, 550 U.S. 544 (2007) (quoting *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). If the resolution of the motion "would depend either on facts not yet in evidence or on construing factual ambiguities in the complaint in [the defendant's] favor," the court should deny it. *Omar*, 334 F.3d at 1251–52.

The defendants here argue that the Browns' § 1983 claims accrued on February 9, 2022, when Hale and Reynolds told James Brown that his contract would not be renewed, and so the complaint came outside of the two-year statute of limitations since the Browns filed it on August 9, 2024.[4] Doc. 38 at 6. But it is not readily apparent from the face of the Browns' complaint that their claims are time barred. *See LaGrasta*, 358 F.3d at 845. The Browns allege that their landlord threatened to send Patti Brown's posts in December 2020, James' non-renewal came two years later in February 2022, the University did not give him any reason for it, and he did not learn that their landlord actually forwarded the Facebook posts to the defendants until March 2023. Doc. 36 at 4. Accepting these facts as true and drawing all reasonable inferences in the Browns' favor, the court cannot readily conclude they knew or should have known that a constitutional right had been violated and that a cause of action existed until March 2023. *Cf. Johnson v. City of Bessemer*, 180

---

[4] The defendants insist that *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 953 (M.D. Ala. 1997); and *Yearwood v. Holloway*, 2005 WL 1926605, at *6 (M.D. Ga. Aug. 11, 2025), support their argument that the Browns' claim accrued on the date they informed James Brown that his contract would not be renewed. Doc. 41 at 6–7. Even if "in public employment cases, claims are often found to accrue when an employment decision is made and communicated to the plaintiff," *Yearwood*, 2005 WL 1926605, at *5, these opinions are distinguishable from the case at hand. *See Ricks*, 449 U.S. at 259–62 (concluding that a professor's Title VII claim accrued when the university informed him that his contract would not be renewed and not on his final day of employment); *Anderson-Free*, 970 F. Supp at 953 (denying a motion to dismiss where the plaintiff argued her § 1983 claim accrued on the day she received her notice of nonrenewal and her complaint was filed within two years of that date); *Yearwood*, 2005 WL 1926605, at *5–6 (rejecting plaintiff's argument that her § 1983 claim did not accrue until she had exhausted all of her administrative remedies).

F. Supp. 3d 1013, 1023 (N.D. Ala 2016) (finding a state employee's § 1983 claim for his suspension accrued when he received notice from his employer that "clearly explained the reasons for [his] suspension, including the Facebook post at issue and how that post violated workplace rules"). Accordingly, the court will not dismiss the Browns' claims as time barred at this stage of litigation.[5]

## C.    Qualified Immunity

Finally, the defendants argue that they are entitled to qualified immunity from the § 1983 claims brought against them in their individual capacities. Doc. 38 at 6–10. Qualified immunity "protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). The Supreme Court and the Eleventh Circuit "have 'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Miller v. Palm Beach County Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)) (cleaned up).

---

[5] Because the court declines to find that the complaint is untimely at this stage, it does not address the parties' arguments about equitable tolling. Doc. 40 at 5–7; Doc. 41 at 3–7; *see Arce*, 434 F.3d at 1261 (explaining that equitable tolling is appropriate when the plaintiff shows that extraordinary circumstances prevented him from timely filing his complaint).

At the first step in the qualified immunity analysis, the defendants must establish they were acting within their discretionary authority when they decided not to renew James Brown's employment contract, *see id.*, which the parties do not dispute. *See* Doc. 38 at 8–9; Doc. 40 at 7–8.  Therefore, the burden shifts to the Browns to show that qualified immunity is not appropriate. *Miller*, 129 F.4th at 1333.  To do so, a plaintiff must plausibly allege that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* (quotation marks and citation omitted).  "To survive a qualified immunity defense, the plaintiff must satisfy both showings," *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (quoting *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017)) (cleaned up), and the court may exercise its discretion in determining which prong to consider first. *Maddox v. Stephens*, 727 F.3d 1109, 1120–21 (11th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) ("[W]e are afforded the flexibility to determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all.").

Exercising this discretion, the court first considers whether the Browns have met their burden to show that their First Amendment rights were clearly established at the time of the defendants' actions.  "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he

11

is doing violates that right.'" *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1273 (11th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *Gaines*, 871 F.3d at 1208 (explaining that courts consider whether officers had "fair warning" that their conduct violated a constitutional right).  This "standard is a demanding one," *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1235 (11th Cir. 2020), and in the First Amendment context, a defendant "will only rarely be on notice that his actions are unlawful." *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000) (quotation marks and citation omitted); *Gaines*, 871 F.3d at 1210 ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context.").

A plaintiff nevertheless can show that a government official was on notice that his actions were unlawful in one of three ways.  The first is by pointing to a "materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court." *Stalley v. Cumbie*, 124 F.4th 1273, 1284 (11th Cir. 2024) (quotation marks and citation omitted).  This path "looks at the relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law." *Id.*  A plaintiff does not need to identify "a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The two remaining approaches are known as "obvious clarity" cases, which

are "rare" and "narrow exceptions." *Gaines*, 871 F.3d at 1209; *Moore v. Pederson*, 806 F.3d 1036, 1049 (11th Cir. 2015) (explaining that obvious clarity cases require the plaintiff to show that the officer's acts were "so egregious that preexisting, fact-specific precedent was not necessary" to give officers fair warning that their actions were unreasonable).  In the second approach, the plaintiff may identify a "broader, clearly established principle that should govern the novel facts of the situation." *Stalley*, 124 F.4th at 1284 .  And in the third, "the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary." *Id.*  In any event, the Supreme Court has repeatedly cautioned lower courts "not to define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742.

Here, the Browns contend that "a reasonable university official would have known that punishing an employee because of his spouse's constitutionally protected speech was unlawful" (Doc. 40 at 2), but they do not identify any materially similar caselaw from the United States Supreme Court, the Eleventh Circuit, or the Alabama Supreme Court to support this contention.  While the Browns point to *Lane v. Franks*, 573 U.S. 228 (2014), and *Adams v. James*, 784 F.2d 1077 (11th Cir. 1986), (*see* Doc. 40 at 7–8), these two cases are inapposite.  In *Lane*, 573 U.S. at 238–42, the Supreme Court held that the First Amendment protected an employee from suffering adverse employment consequences for providing truthful subpoenaed

13

testimony outside the course of his ordinary job duties.  And in *Adams*, 784 F.2d at 1078–82, the Eleventh Circuit remanded a case back to the district court to address whether two prisoners, who had been trained as law clerks, had stated a First Amendment retaliation claim for receiving a transfer to another prison after one prisoner attempted to send a letter to the media about a case and the other took case papers from his supervisor's desk.  Because neither involved retaliation against an employee for a family member's speech, these cases do not amount to existing precedent that places the "constitutional question beyond debate."[6] *Ashcroft*, 536 U.S. at 741.

In addition, the Browns do not establish that their claim is an obvious clarity case under the second or third approaches. *See* Doc. 40 at 7–8.  The nonrenewal of James Brown's contract because of his wife's speech is not so egregious as to violate the First Amendment on its face, and caselaw does not clearly and broadly establish that all reasonable officials in the same situation would know they were violating

---

[6] Notably, the Eleventh Circuit in *Gaines*, 871 F.3d at 1207–08 & 1210–12, addressed whether a school superintendent was entitled to qualified immunity from a teacher's First Amendment claim that he denied the teacher a promotion in 2013 after her father criticized the superintendent in a local paper.  The court concluded that the plaintiff failed to show that the right to be free from an adverse employment action for her father's speech was clearly established at the time the superintendent denied the teacher's promotion. *Id.* at 1210–12 (rejecting the teacher's argument that a Title VII case from the Supreme Court, *Thompson v. N.A. Stainless*, 562 U.S. 170 (2011), or a district court case, *Lewis v. Eufaula City Bd. of Ed.*, 922 F. Supp. 2d 1291 (M.D. Ala. 2012), clearly established the teacher's constitutional right).

the Browns' First Amendment rights. *See Gaines*, 871 F.3d at 1209; *Moore*, 806 F.3d at 1049.

Accordingly, the court finds that Palan, Hale, and Reynolds are entitled to qualified immunity from the Browns' § 1983 First Amendment retaliation claims against them in their individual capacities. The court therefore dismisses these claims with prejudice.[7]

## IV. CONCLUSION

For the reasons, it is ORDERED as follows:

1.      The Motion to Dismiss (Doc. 38) is GRANTED to the extent that the Browns' § 1983 claims against the defendants in their individual capacities are DISMISSED with prejudice, and otherwise DENIED.

2.      The case will proceed with the Amended Complaint (Doc. 36) as the operative pleading, but the only surviving claim is Count Two for prospective injunctive relief.

---

[7] While the court is mindful of Federal Rule of Civil Procedure 15(a)'s direction to freely grant leave to amend, the Browns have had an opportunity to amend their complaint and did not request leave to amend their complaint a third time. Additionally, a district court need not allow an amendment where (1) "there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies" through prior amendments; (2) amending the complaint would prejudice the opposing party; or (3) "amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001); *see Johnson v. Broussard*, 2017 WL 2687464, at *6–7 (N.D. Ala. June 22, 2027) ("There is no reason to require defendants to expend additional time and money defending claims that cannot possibly succeed."). The Browns have attempted to cure the deficiencies in their claims against the defendants in their individual capacities, and any amendment of these claims would be futile for the reasons discussed above.

DONE and ORDERED on March 9, 2026.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE